Good morning, Your Honor. May I please quote? I am Satish Deshpande, prosecutive and appellant in this case. This case has been, the centerpiece of this case from the defendants has been there was excessive malpractice case and that was the reason why the plaintiff was not selected. However, according to the Burdine case, this itself is a greater weakness because just saying malpractice case did not give an opportunity for the plaintiff to a fair and full opportunity to prove it as a pretext. It is a pretext for several reasons. I'll start first with the weakness. And the first weakness is the Code of Federal Regulations, Title 42, Section 482.22. It is a condition of participation for the hospitals. And medical staff has to be established, has to operate under bylaws, and the medical staff has to enforce bylaws. And this was not done in this case because eligibility criteria were set forth. There was nowhere in the eligibility criteria that excessive malpractice case rendered him ineligible. And secondly, there was no single instance of any negative remark in the whole malpractice history. On the contrary, there has been a lot of positive information about the plaintiff. And secondly, the bylaws also require these malpractice cases to be evaluated thoroughly and documented. And that documentation has not been made available by the defendants. And importantly, the care line manager who has the responsibility to review and make a recommendation for the professional standard board, he did. He evaluated. He went to Dr. Molina and said, the plaintiff has cleared. He's satisfied. We should move forward. But Dr. Molina said no because she had put away his file in the very early beginning. And also in the bylaws, it is in the VHA handbook, it says the malpractice cases have to be evaluated. And there was a caution that even a higher level of screening, which some candidates needed and the plaintiff did not fall into that category, that it does not indicate the practitioner will have future practice issues. That was ignored. And it also says that many of the allegations are proven groundless. That was not taken into consideration. And Dr. Molina all along kept on saying she was not, she was wearing the red flags and she didn't have confidence in him. She was wondering if the plaintiff can work without supervision when he was working in five other hospitals before and four other nursing homes. All of them had verified that his standing, he was in good standing with respect to his privileges and there was no negative remark. All the references were excellent. One of the references was that I would rehire him. There was not a single negative remark. But she decided not to move forward with credentialing. So this roadblock was the one that is the greatest weakness. And again, there was no clarity and specificity on this issue so that the plaintiff could prove his pretext. Additionally, there were other issues. There was discrimination denied in this credentialing process because similarly situated physicians were allowed to go through this credentialing process. He was not. And the reason was that they didn't have a malpractice case. But it is also true, none of them engaged in protected activity. So there was a discrimination applied. And there was an argument that the policy is not needed to be followed. It is not true because it was a condition of participation. And the condition of participation also says all eligible candidates, the medical staff must examine the credentials of all eligible candidates. And you should enforce the bylaws. That was not done. And also there was shifting explanation, another weakness, Dr. Malina. And before that, the plaintiff had worked in other hospitals and subsequently also he worked in other hospitals, including the defendants hospital in Arizona, Tucson, as well as in Long Beach with the same malpractice history. He had provision of about 15 hospitals in California and here altogether. None of them has issued any negative remarks. And defendants have not been able to produce any of those. So if the malpractice history was good for others, and it should have been good for these defendants here also, but it didn't look like that. And again, the position, sorry. Thank you. And we'll now hear from the affiliate. We have your arguments. Thank you. Good morning. May it please the Court. Mark Osman for the Defendant Secretary of Veteran Affairs. When Dr. Deshpande applied for a medical officer of the day position at the VA Hudson Valley, he had seven malpractice lawsuits. One of those cases had settled for over a half million dollars. Some of the others were still pending when he applied. And on top of all that, a state agency was investigating his professional conduct. Although Dr. Deshpande may think his malpractice cases should not overshadow his other attributes, employers have the discretion to use their own hiring criteria. The credentialing committee, did it have guidelines as to how to respond to the presence of prior malpractice claims when new doctors were applying for credentials? There are some guidelines that are in the record. The record isn't extremely well developed on this point, but there are some guidelines. And did the guidelines, I'm just curious whether the application here ran afoul of the guidelines such that Dr. Deshpande wasn't qualified under the credentialing guidelines or whether this was a discretionary judgment that above and beyond our actual credentialing guidelines, we are uncomfortable with his record? There is no record here of the guidelines being violated or departed from. They do set forth criteria that the VA should consider malpractice cases within a certain number of years, but nothing restricts the way in which those... So it doesn't say, if there's only this many, don't worry about it, or here are the steps you have to take before you consider adversely a malpractice event allegation? No, there's nothing that rigid. And also, even if there were something like that in the record, a departure from internal guidelines would not necessarily establish a retaliation claim under this court's precedent. So Dr. Deshpande testified, I think, multiple times in depositions and by affidavit that he was specifically told that Dr. Molina had two concerns, one being the malpractice, and I understand that's the one you want to focus on, and the other being his history of his discrimination case. Why isn't that enough to create a factual dispute, to establish at least a promulgation case and create a factual dispute as to whether that was, in fact, a consideration that Dr. Molina relied on? So there is testimony from Dr. Deshpande that Dr. Benninger told him, that Dr. Molina told Dr. Benninger that she had two concerns, the malpractice cases as well as the discrimination cases. Even if we credit that conclusory testimony, it's still not material because there's simply no evidence that would dispute the fact that Dr. Deshpande's malpractice history was a non-starter for VA Hudson Valley. We call that a conclusory testimony, like somebody told me X. That doesn't sound conclusory. That's a very clear fact, they told me X. I think the way to think about it more is it's not supported by anything else in the record. Dr. Deshpande had extensive back and forth with Dr. Benninger, but there's no indication that this was ever brought up again. Dr. Deshpande wrote Dr. Molina a letter in September 2012 trying to address her concerns about his candidacy. There's no mention of her concern, alleged concern, about his discrimination lawsuits. Are you getting a dewaying of the evidence at that point, though? I don't think so, Your Honor, and that's simply because the evidence, there's overwhelming evidence that the malpractice cases were the decisive factor here. Dr. Molina, who was chief of staff at VA Hudson Valley for 15 years, said that she had never hired a medical officer of the day with this kind of malpractice history. Dr. Benninger attested to this practice at his deposition. We also have HR statistics from around 2012 and 2013, around the time that Dr. Deshpande would have been onboarded. None of the applicants who were hired instead of him had any malpractice history at all, let alone seven malpractice cases, let alone any that were pending. They also had no pending state investigations. Dr. Deshpande says that he was hired for a subsequent position by the VA in Arizona. If memory serves, he was hired by the VA in Arizona around 2017 or 2018. We don't have any information about who the other applicants were for that position, whether they had any malpractice history, whether they didn't. A lot of time had passed between the malpractice cases that were at issue for his 2011 application to the VA Hudson Valley. After the passage of time, I suppose it would be reasonable for those to be less of a concern when he was applied to the VA in Arizona. When you look at what you call a malpractice history, is that purely a number of claims? Because with a malpractice case, it's pretty common, say, the surgeon operates on the wrong foot. You sue the surgeon, you sue the anesthetist, you sue the ambulance driver, and everybody else. If you only look at the number of malpractice claims, you may not really have a picture of whether somebody is a person who habitually or ever commits malpractice. Am I wrong? I think you're right, Your Honor. Dr. Deshpande testified that he sent all the information he had about all of his cases. One of those cases settled for over a half million dollars. As I mentioned, it led to a state investigation of his professional misconduct. But there's really nothing in the record that discusses in detail what exactly was considered, how deep into the facts they went, what Dr. Deshpande told Dr. Benninger about the malpractice case. But it is true that the number might not necessarily tell you everything, but I think it was reasonable for the VA to conclude that it said something. And also, when you had a case that settled for a half million dollars, there's at least potentially something there. If there are no further questions, we ask that the judgment of the District Court be affirmed. Thank you. And thank you both, and we will take the matter under advisement.